IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| REZA AHMADI, | § | |
|    Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 11-224 |
| | § | |
| RICK THALER | § | |
|    Respondent. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Petitioner Reza Ahmadi ("Ahmadi") seeks a writ of habeas corpus by a person in state custody, pursuant to 28 U.S.C. § 2254. Dkt. No. 1. On February 3, 2012, Respondent Rick Thaler ("Thaler") moved for summary judgment. Dkt. No. 13. The case was referred to the undersigned pursuant to 28 U.S.C. § 636.

Ahmadi claims that he received ineffective assistance of counsel at trial because his attorney failed to: (1) object to the trial judge's instruction regarding reasonable doubt; (2) introduce evidence of a witness's criminal record; (3) object to the inconsistent statements offered by several witnesses; (4) object to "the language which was used as inferences," namely, that the phrasing used in some questions led the jury to incorrect conclusions; (5) assert that the build up of inventory was valid under the terms of the contract; (6) assert that the evidence against Ahmadi was insufficient to sustain his conviction. Dkt. No. 1. As to the first claim, it was considered by the state court and found to be meritless. The state court's resolution of this claim was not unreasonable. However, Ahmadi failed to raise the final five claims in the state courts and now is procedurally barred from doing so. These claims are procedurally defaulted and cannot be considered by the Court. Accordingly, the Court recommends that Thaler's motion for summary judgment should be granted.

## I. Background

### A. Factual Background

Ahmadi was indicted for three counts of theft of property by fraud relating to a

1

scheme that existed from June 2003 to August 2005. The fraudulent scheme related to warranty work performed on Hewlett Packard-Compaq ("HP") laptop computers used by students at St. Agnes, a college preparatory school. While the details are a bit more involved, the scheme generally involved charging for work that was not required to be done, or for work that was not done at all. Ahmadi was indicted for theft of property from Hewlett-Packard; Safeware Insurance; and St. Agnes, but was convicted of theft only from HP. With this generalized understanding as a guide, the record reflects the following facts.

In 1994, Ahmadi founded Intelligent Interface, a computer repair company. Dkt. No. 15-26, p. 1589.[1] Intelligent Interface was a "service partner" for HP.[2] Dkt. No. 15-27, p. 1629. As a service partner, Intelligent Interface was authorized to perform warranty repair work on HP computers. Id. When warranty repair work was performed, HP would provide the parts required to make the repairs and would pay Intelligent Interface for the labor costs; the customer would pay nothing. Id. Intelligent Interface held a "premier" status with HP; this status meant HP paid Intelligent Interface a higher rate for its labor costs than it paid other service providers. Dkt. No. 15-18, p. 820.

As part of its premier status, Intelligent Interface was required to demonstrate that a single computer repaired by it would not require more than one part for repair within a 30-day period. Dkt. No. 15-18, p. 819. As one witness testified, if Intelligent Interface could "maintain [that] their technician looked at that computer and identified the singular . . . part that was the problem and repaired it and it didn't come back in for a 30-day period . . .the higher [the] status they receive and the more reimbursement money they receive." Id.

St. Agnes is a college preparatory school for girls located in Houston, Texas. Dkt. No. 15-14, p. 478. Beginning with the 2000-2001 school year, St. Agnes began a program whereby students would be equipped with laptop computers. Id. As part of the laptop

---

[1] The page number refers to the Bates-stamped number at the bottom of the record page.

[2] Hewlett Packard owns Compaq. The two companies are used interchangeably throughout the record.

program, the school started a Computer Audio Visual Equipment department, which was known as the "CAVE." Id., p. 479. Students could bring malfunctioning laptops to the CAVE for diagnosis and repairs. Id., pp. 479-80. Many computers were still under warranty with HP. Furthermore, many parents purchased a repair insurance policy from Safeware Insurance, to cover repairs that were not under warranty. Id.

In 2001, St. Agnes hired Nereo Garza – who was Ahmadi's co-defendant at trial – to serve as a technician at the CAVE. Dkt. No. 15-14, pp. 482-83. At some point in 2003 or 2004, the laptops were infected with an "awful" virus. Id., p. 486. Intelligent Interface agreed to send employees to St. Agnes to assist in clearing the virus at no cost to St. Agnes. Id. After that incident, St. Agnes used Ahmadi's company as its warranty repair provider. Id. St. Agnes did not pay Intelligent Interface to provide the repair service. Instead, HP as part of its warranty, paid the labor costs associated with replacing each part. Dkt. No. 15-22, p. 1211-12.

In 2004, when Intelligent Interface became the warranty repair provider for St. Agnes, Ahmadi and Garza entered into an agreement. Under the terms of the agreement, Ahmadi paid Garza – who was still employed by St. Agnes – 19 percent of any labor payment received from HP as part of the St. Agnes warranty repair. Dkt. No. 15-25, p. 46; Dkt. No. 15-26, p. 97. Garza, however, was not a "certified warranty service provider," which meant that HP did not authorize Garza to perform warranty repair work. Dkt. No. 15-15, p. 619. Daniel Pham, a technician employee of Intelligent Interface, was stationed in the CAVE "specifically to do the warranty work for the equipment." Id., p. 618. Ahmadi paid Pham an hourly rate to work forty hours a week at St. Agnes. Dkt. No. 15-22, pp. 1135-36.

As relevant here, the testimony showed that Garza was submitting warranty claims for as many as 28 students per day. Dkt. No. 15-15, p. 524. From an alphabetical roster of student names, Garza began with the students whose last name started with "R" and each day would make claims for 28 more students. Id.

It was later discovered that "many of these students never even had some of [the

claimed] parts in their [computers]." Dkt. No. 15-16, p. 648. The school's director of technology testified that "none of the parts . . . went into any computer belonging to these children." Id., p. 662. The technology director testified that, when he reviewed the school's records, Garza was improperly rotating the serial numbers of the laptops to ensure that only one part was being ordered for each laptop within a 30 day period. Dkt. No. 15-16, p. 648. If a second claim was made for repairs to a laptop computer – within a 30 day period – HP would replace the part, but would not pay Intelligent Interface for the labor to replace the part. Dkt. No. 15-19, p. 991. By rotating the computer serial numbers, Garza ensured that every claim would be reimbursed for labor costs.

With each warranty claim, HP paid Intelligent Interface between $30 and $90 for the labor to replace the faulty part. Dkt. No. 15-15, p. 527. If Garza submitted a warranty claim for a part on a particular laptop that had been previously claimed in the past 30 days, an Intelligent Interface employee would ask Ahmadi what they should do. Ahmadi instructed the employee – Chris Cardenas – to call Garza and let him he know "he cannot order on that serial number." Dkt. No. 15-25, p. 1502. Garza would either give Cardenas a different laptop serial number for the product or tell him to "forget it." Id.

After receiving the list of laptop serial numbers from Garza, Cardenas would enter information into Compaq's system "guessing" what the problem was with each laptop. Dkt. No. 15-26, p. 1542. In essence, Cardenas fabricated the reason for the repair. Cardenas did this because Garza did not provide information identifying what was wrong with the laptop and the Compaq warranty replacement ordering system required that information. Id., p. 1540. Cardenas testified that Ahmadi knew what Cardenas was doing "every step of the way." Id., p. 1544.

Furthermore, Pham testified that he was often replacing parts that "looked defective." Dkt. No. 15-22, p. 1148. If a part had a "cosmetic problem," Garza instructed Pham to replace it. Id. Pham testified that he "believe[d]" he was "replacing a lot of good parts with good parts." Id., p. 1157. When Ahmadi stationed Pham at St. Agnes, he instructed Pham

4

to "listen to what Mr. Garza" told him to do. Id., p. 1153. Pham also testified that Ahmadi would call Garza "maybe once every day." Id., p. 1155. Pham said that, based on what he could hear of the conversations, they sounded like "business" conversations rather than personal conversations. Id.

A representative of HP researched all of the St. Agnes-related warranty claims made by Intelligent Interface. Dkt. No. 15-23, p. 1300. On several occasions, Safeware Insurance – a laptop repair insurance provider utilized by St. Agnes – paid to replace a laptop that had been reported defective. Id., p. 1309. Typically, in such cases, a new laptop would be purchased for the student and the serial number for the replaced laptop would "disappear[]." Id., p. 1310. On at least nine different occasions, a warranty claim was submitted on a serial number of a laptop that Safeware had paid to replace. Id., p. 1310.

HP was so concerned about the number of warranty repairs being made, that they had their engineers examine whether "they were putting out a defective product because of the breakage rate at one Catholic all-girls high school." Dkt. No. 15-23, p. 39.

When confronted with the evidence of parts being ordered from HP, but not used on the listed computer, Garza told Jane Meyer – the head of the school – that "he was trying to build up parts so that when a computer needed fixing, he would have the parts and he wouldn't have to wait." Dkt. No. 15-15, p. 527. When Meyer showed Ahmadi the list of 28 orders being placed each day, she "asked him if he did not think something was strange when he saw all of these coming in in one day." Dkt. No. 15-15, pp. 535-36. Ahmadi's response was that "he did not question his client." Id. A representative of HP testified that obtaining parts by submitting a warranty claim, when there was nothing wrong with the computer, violated their warranty terms and conditions and was fraud. Dkt. No. 15-23, pp. 1320-21. While it would not be a violation of the terms and conditions to build an inventory by purchasing parts, Garza's actions violated the terms and conditions by falsely obtaining parts that he claimed were necessary for repairs. Id., pp. 1318-19. These false claims also led to HP paying unnecessary labor costs for repairs that were not performed. Id.

5

Dennis Leahy, a warranty fraud investigator for HP, testified that he met with Cardenas and Ahmadi regarding St. Agnes, after the school informed HP that it suspected fraud. Dkt. No. 15-19, p. 963. Leahy testified that "everything" was "unusual" about the way Garza ordered warranty parts. Id., p. 973. In a typical system, the certified technician – in this case, Pham – would diagnose the computer problem and fill out a form with all of the relevant information. That form would then be directly filed in the electronic ordering system. Id., pp. 974-75. From that entry, the warranty-protected replacement part would be ordered. Id. In the instant case, Garza – who was not a certified technician – sent a list of requested parts to Cardenas, one of Amhadi's employees. The list of requested parts failed to identify how the part was defective. Instead, Ahmadi's employee – again, Cardenas – would have to enter the diagnosis identifying why the part needed to be replaced. Id.

Leahy further stated that Ahmadi denied giving Garza "anything of value," beyond rodeo tickets, which apparently Ahmadi gave away freely to friends and business associates. Id., p. 978.[3] Garza testified that no one at St. Agnes was told about the incentive agreement between him and Ahmadi. Dkt. No. 15-29, p. 1804. In 2003 & 2004, Intelligent Interface paid Garza $154,359.23 as his share of the labor costs, per the incentive agreement. Dkt. Nos. 17-24, p. 4394; 17-26, p. 4465. This was in addition to the $42,626.22 salary that St. Agnes paid Garza in 2004. Dkt. No. 17-26, p. 4464.

Leahy asked Ahmadi to provide a proof of purchase or an invoice showing ownership of the inventory parts at St. Agnes. Dkt. No. 15-19, p. 980. Leahy testified that Ahmadi claimed to have such records, but Ahmadi never produced them. Id. Garza testified that he told Ahmadi about the parts inventory and that he "kept him in the loop about how business was going." Dkt. No. 15-29, p. 1751; Dkt. No. 15-30, p. 1824.

**B. Trial**

As relevant here, during voir dire, the Court informed the jury:

Here's the deal on reasonable doubt. The Court is not going – not only here but

---

[3] Garza also denied to Leahy that he was being paid by Ahmadi. Dkt. No. 15-19, p. 986.

anywhere else in this State – is not going to define for you what a reasonable doubt is. The Court of Criminal Appeals has told us that is up to each individual juror to decide in his or her own mind so that this juror gets to decide, this juror gets to decide, this juror gets to decide through all 12 of you. There's not going to be a light, no buzzer, no whistle, nothing that goes off to say, okay, the State has met its burden. It's up to you to decide when you are convinced beyond a reasonable doubt as to each element of the offense."

Dkt. No. 15-3, p. 84.

Ahmadi was charged with three counts of theft: one count of theft from HP; one count of theft from the student laptop insurance carrier, Safeware; and one count for theft from St. Agnes. Dkt. No. 15-14, pp. 449-51. After a seven-day jury trial, Ahmadi was found guilty of theft against HP, but was acquitted on the two remaining charges. Dkt. No. 16-1, p. 1929. Ahmadi was sentenced to seven years of imprisonment and a $5,000 fine. Dkt. No. 16-3, p. 2017.

### C. Direct Appeal

Ahmadi appealed his conviction to the Court of Appeals for the Fourteenth District of Texas in Houston. Dkt. No. 15-9, p. 170. Ahmadi raised three issues on direct appeal: (1) that the evidence was legally insufficient to show that Ahmadi "intentionally engaged in a fraud" either by himself or with Garza; (2) the evidence "was factually insufficient to show that [Ahmadi] intentionally engaged in fraud;" (3) "the trial court erred in explaining the concept of reasonable doubt in a way that diminished the State's burden of proof" ("direct appeal issues"). Dkt. No. 15-9, pp. 177-78.

On January 28, 2010, the Fourteenth District upheld Ahmadi's conviction. Dkt. No. 15-3, p. 74. As to the first and second claims, the Court found that there was enough circumstantial evidence to show that Ahmadi and Garza worked together toward the common purpose of defrauding HP via theft. Dkt. No. 15-3, pp. 75-84. The Court noted that Ahmadi's guilt was supported by the existence of the incentive agreement between Ahmadi and Garza; Ahmadi's incentive payments to Garza; Ahmadi's knowledge of Garza's ordering system; of Cardenas having to make up reasons why repairs were needed; and that Ahmadi

and Garza were in contact nearly every day. Based upon those facts, the Court of Appeals concluded "that a rational trier of fact could find that appellant was a party to a scheme to commit theft and that he intentionally committed the essential elements of the charged offense beyond a reasonable doubt." Id., p. 83. These findings were used to reject both the first and the second claim. Id., p. 84, n. 8.

As to the issue of the judge's instructions regarding reasonable doubt, the Court of Appeals first noted that Ahmadi's lawyer did not object to the instructions. Dkt. No. 15-3, pp. 84-85. Furthermore, the Court of Appeals noted that the judge correctly stated the law: each juror must individually decide what constitutes proof beyond a reasonable doubt; and, that the burden of proving that this standard had been met rests with the State. Id.

### D. Discretionary Review

Ahmadi's petition for discretionary review with the Texas Court of Criminal of Appeals was refused on October 6, 2010. Ahmadi v. State, 2010 WL 307909 (Tex. App. – Houston (14th Dist.) 2010).

### E. State Habeas Action

On June 10, 2011, Ahmadi filed an application for a writ of habeas corpus in the Court of Criminal Appeals of Texas. Dkt. No. 15-1, p. 7. Ahmadi raised five claims: (1) there was insufficient evidence to convict him beyond a reasonable doubt; (2) the State knowingly used false testimony when Jane Meyer said that Intelligent Interface did not charge St. Agnes for repairing the computers in the wake of the virus attack – Ahmadi claims Intelligent Interface sent an invoice to St. Agnes, which was paid; (3) the State withheld the evidence that Ahmadi contacted IBM about the laptop situation at St. Agnes; IBM became the laptop provider for St. Agnes and the number of claims plummeted; (4) Ahmadi's trial counsel was ineffective for failing to object to the judge's explanation of reasonable doubt and for failing to introduce the evidence of the relationship with IBM; (5) the indictment was invalid

because it failed to show that Ahmadi committed theft ("state habeas issues"). [4] Id., p. 11-15.

The District Court of Harris County, Texas rejected all of Ahmadi's claims, finding that Ahmadi failed "to demonstrate that his conviction and sentence were improperly obtained in any way." Dkt. No. 15-1, pp. 31-32. On September 14, 2011, the Court of Criminal Appeals "denied" Ahmadi's application. Dkt. No. 15-1, p. 2.

### F. Federal Habeas Action

On November 3, 2011, Ahmadi timely filed a petition for a writ of habeas corpus of a person in state custody, pursuant to 28 U.S.C. § 2254. Dkt. No. 1. Ahmadi raises six claims: (1) his lawyer was ineffective for failing to object to the trial judge's instruction regarding reasonable doubt; (2) trial counsel was ineffective for failing to introduce evidence of Pham's criminal record; (3) trial counsel failed to object to the inconsistent statements offered by Pham, Garza and Meyer; (4) trial counsel was ineffective for failing to object to "the language which was used as inferences," namely, that the phrasing used in some questions led the jury to incorrect conclusions; (5) trial counsel was ineffective for not asserting that the build up of inventory was valid under the terms of the HP contract; and (6) counsel was ineffective for not asserting that the evidence against Ahmadi was insufficient to sustain his conviction ("federal habeas issues"). Id.

On February 3, 2012, Thaler filed his response. Dkt. No. 13. As to the first issue, Thaler asserts that the Court of Appeals was not unreasonable in deciding that the judge's instructions regarding reasonable doubt were a correct statement of the law. Id., p. 17. As to Ahmadi's remaining claims, Thaler asserts they were not properly raised in the instant petition, because they were not previously raised in the state courts. Furthermore, Thaler asserts that, because Ahmadi has already filed a petition for a writ of habeas corpus in the

---

[4] The Court notes that Ahmadi's claim regarding Meyer – that she falsely testified that St. Agnes paid Intelligent Interface for its virus removal service – contradicts Ahmadi's own testimony that he "did not charge" the school. Dkt. No. 15-26, pp. 1594-96. The IBM contract and the reduced claims were not withheld from Ahmadi; in fact, that evidence was presented to the jury. Dkt. No. 15-3, p. 81.

state court, any future state writ – based upon the unexhausted issues – would be dismissed as an "abuse of the writ." Id., p. 8. Thus, Thaler argues that the claims are procedurally defaulted. Id. Even if the claims were not defaulted, Thaler asserts they are substantively meritless. Id., pp. 18-19.

On March 8, 2012, Ahmadi filed a response in which he reiterated his prior issues and stated that he "has exhausted his state remedies." Dkt. No. 14.

## II. Applicable Law

### A. Summary Judgment

Summary judgment pursuant to Rule 56(c) is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences are made and doubts resolved in favor of the nonmoving party. Dean v. City of Shreveport, 438 F.3d 448, 454 (5th Cir. 2006). Hearsay is not competent summary judgment evidence. Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 549 (5th Cir. 1987). As relevant here, summary judgment is an appropriate vehicle through which to resolve a habeas petition, where the facts otherwise support such resolution. Goodrum v. Quarterman, 547 F.3d 249, 255 (5th Cir. 2008).

## B. Section 2254

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner convicted in a state court may challenge his conviction to the extent it violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, only constitutional or federal law violations are subject to review by this Court under § 2254. Jurisdiction over such petitions lies in either the district where the prisoner is being held or the district where the state court, that convicted and sentenced the prisoner, is located. Wadsworth v. Johnson, 235 F.3d 959, 960 (5th Cir. 2000). In conducting such a review, a district court

> may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."

Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

"A decision is contrary to clearly established federal law under § 2254(d)(1) if the state court (1) 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law'; or (2) 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and reaches an opposite result." Simmons v. Epps, 654 F.3d 526, 534 (5th Cir. 2011) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)).

"The state court makes an unreasonable application of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts'; or (2) 'either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Simmons, 654 F.3d at 534 (quoting Williams at 407).

Not only is the subject matter of review limited, but the nature of the review is limited

as well. "With respect to the review of factual findings, AEDPA significantly restricts the scope of federal habeas review." Brown v. Dretke, 419 F.3d 365, 371 (5th Cir. 2005). Under the applicable standard, mere disagreement with the conclusions drawn by the state court is an insufficient basis upon which to grant habeas relief. McDaniel v. Brown, 558 U.S. 120, 130 S. Ct. 665, 673 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785-86 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). A federal court is to "review only the state court's decision, not its reasoning or written opinion, to determine whether it is contrary to or a misapplication of clearly established federal law." Catalan v. Cockrell, 315 F.3d 491, 493 (5th Cir. 2002).

"Because a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion." Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir.2003); Garrison v. Quarterman, No. 204-CV-0056, 2007 WL 57134, *3 (N.D. Tex. 2007). The Court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." Jordan v. Dretke, 416 F.3d 363, 368 (5th Cir. 2005).

The Court may not grant the petition if the petitioner has not exhausted the remedies available in the state court. Scott v. Hubert, 635 F.3d 659, 667 (5th Cir. 2011) (citing 28 U.S.C. § 2254(b)(1)(A)). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999). In order to be "fairly presented" a claim must either be framed "in terms so particular as to call to mind" a specific constitutional right or "allege a pattern of facts that is well within the mainstream of constitutional litigation." Scott v. Hubert, 635 F.3d 659, 667 (5th Cir. 2011). In other words, the claim must either cite a

specific constitutional provision or list facts that clearly to point a recognized constitutional right. A claim is not exhausted if it could have been, but was not, presented to the state court. Rocha v. Thaler, 626 F.3d 815, 820 (5th Cir. 2010); Ayestas v. Thaler, 462 Fed. App'x. 474 (5th Cir. 2012) (unpubl.). This presentment extends to claims made either on direct appeal or in a state habeas petition. Beazley v. Johnson, 242 F.3d 248, 264 (5th Cir. 2001).

### C. Ineffective Assistance of Counsel

Under Texas law, a claim of ineffective assistance of counsel is properly brought on collateral attack rather than via direct appeal. Andrews v. State, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). To establish ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was objectively unreasonable, rendering it deficient; and (2) that the deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 689-94 (1984). To merit relief, the petitioner must meet both prongs. Id. In contrast, "a court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

To satisfy the first prong, the petitioner must establish that counsel's performance was deficient. "[T]he proper measure of attorney performance is reasonableness under prevailing professional norms." U.S. v. Molina-Uribe, 429 F.3d 514, 519 (5th Cir. 2005). Courts will not "audit decisions that are within the bounds of professional prudence." Id. at 518. To warrant relief, because of ineffective assistance of counsel, counsel's performance must be so deficient that it "renders the result of the . . . proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Even if counsel's performance was deficient, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, 466 U.S. at 693 (internal citation omitted). A petitioner must establish that the

error prejudiced the outcome of his trial. A petitioner establishes prejudice where he proves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. To merit relief, the petitioner must show an error that undermines confidence in the reliability of the verdict. Id.

Furthermore, establishing that "a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S.Ct. at 788. "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. (emphasis added). Thus, the question is whether the state court was unreasonable in its resolution of the issue presented, not whether the state court may have been wrong.

With the foregoing factual and legal foundation in place, the Court turns to the claims raised by Ahmadi.

## III. Analysis

Ahmadi has raised many claims between his state direct appeal, his state habeas petition, and his federal habeas petition. Some of his claims – the state direct appeal issues and the state habeas issues – were raised in the state courts and then abandoned, by virtue of not being raised in his federal habeas petition. Additionally, many of his federal claims – the federal habeas issues – were not raised in any state proceeding. The only claim that was fully raised before the state courts and this Court is Ahmadi's claim that his lawyer was ineffective for failing to object to the judge's instructions regarding reasonable doubt. The failure to raise the other issues during either the state direct appeal or habeas process, is fatal to those claims. Further, as noted below, even if those claims were not procedurally defaulted, those claims – like the one properly before the Court – are meritless.

"As a threshold matter," the Court must determine if Ahmadi has exhausted his remedies in state court, as required by 28 U.S.C. § 2254(b)(1)(A). Conner v. Quarterman,

477 F.3d 287, 292 (5th Cir. 2007). "The exhaustion requirement is satisfied if petitioner has fairly presented the substance of his claim to the state courts." Id. (quoting Moore v. Quarterman, 454 F.3d 484, 491 (5th Cir. 2006) (internal quotation marks omitted)). The State concedes – and the record supports – that Ahmadi exhausted his claim regarding effective assistance of counsel and the voir dire instruction on reasonable doubt. However, the State asserts that the remaining claims are unexhausted.

**A. Exhaustion**

Ahmadi makes one overarching claim in his current petition: that he received ineffective assistance of counsel at trial. The Court has interpreted Ahmadi's claim of ineffective assistance of counsel to allege six distinct failures by his counsel: (1) failing to object to the trial judge's instruction regarding reasonable doubt; (2) failing to introduce evidence of Pham's criminal record; (3) failing to object to the inconsistent statements offered by Pham, Garza and Meyer; (4) failing to object to "the language which was used as inferences," namely, that the phrasing used in some questions led the jury to incorrect conclusions; (5) failing to argue that the build up of inventory was valid under the terms of the HP contract; and (6) failing to argue that the evidence against Ahmadi was insufficient to sustain his conviction. Id. Despite raising them now, with one exception, Ahmadi failed to raise these issues before the Court of Criminal Appeals.

Thaler concedes that Ahmadi has properly raised the issue of whether his counsel was ineffective for not objecting to the judge's instructions regarding reasonable doubt. Dkt. No. 13, p. 6. On the other hand, as to Ahmadi's remaining claims, Thaler asserts that the claims are unexhausted and procedurally barred.

The Court begins its analysis from the premise that "[b]riefs by pro se litigants are afforded liberal construction, though even pro se litigants must brief arguments to preserve them." Johnson v. Quarterman, 479 F.3d 358, 359 (5th Cir. 2007). It is clear that Ahmadi failed to raise the following issues on either direct appeal or in his state habeas petition: that his counsel was ineffective for failing to raise the issue of Pham's criminal record; the

15

allegedly inconsistent statements made by Pham, Garza and Meyer; and the improper phrasing that led to incorrect inferences and the terms of the HP contract. In the filings before the Texas courts nothing is mentioned, even in passing, concerning any claim that his counsel was ineffective for failing to raise these issues. That failure leads to the inescapable conclusion that these claims were not properly presented to the state court; for which reason, they are unexhausted. Mercadel, 179 F.3d at 275.

Furthermore, Ahmadi also failed to properly exhaust his claim that his lawyer was ineffective for not objecting to the sufficiency of the evidence. Ahmadi did raise the underlying issue of the sufficiency of the evidence in the Court of Criminal Appeals. However, at no point did he claim his counsel was ineffective. "The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition." Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir.1997) (emphasis added). A claim that counsel was ineffective for failing to raise an issue is legally distinct from a claim regarding the underlying issue. Wilder v. Cockrell, 274 F.3d 255, 262 (5th Cir. 2001). Failure to raise the ineffective assistance of counsel in the state court – even if the underlying substantive issue is raised in the state courts – means the claim is unexhausted and cannot be considered by the Federal court. Id. Because this claim was not brought before the Court of Criminal Appeals under the theory of ineffective assistance of counsel, it is unexhausted.

Furthermore, all of the unexhausted claims made by Ahmadi are procedurally barred. Texas does not have a time limit for habeas relief. Spier v. Quarterman, 278 Fed. App'x. 303, 307 (5th Cir. 2008). It does, however, impose procedural limitations on subsequent petitions. Tex. Crim. Pro. Code 11.07 § 4 states that "[i]f a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application" unless the claims could not have been previously raised or the petitioner can

16

show actual innocence.[5] This procedural bar is known as the "abuse-of-the-writ" doctrine. Rocha v. Thaler, 626 F.3d 815, 820 n. 69 (5th Cir. 2010).

Even if the Court dismissed Ahmadi's unexhausted claims to allow him to pursue them in the state courts, such an action would be futile. All of Ahmadi's unexhausted claims could have been raised in the state court in Ahmadi's direct appeal or state habeas petition, but were not. Thus, any new application for a state writ that Ahmadi might file with the Court of Criminal Appeals would be dismissed as an abuse of the writ, because all of the unexhausted claims raised in the federal petition could have been raised in prior filings. Ex parte Whiteside, 12 S.W.3d 819, 823-24 (Tex. Crim. App. 2000). In short, the abuse of the writ would serve as a procedural bar to any further review of Ahmadi's claims. Because any remanded claims would be procedurally barred at the state level, they are considered defaulted in federal court. Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995); Nobles, 127 F.3d at 423. That default precludes this Court from considering them now. Id.

Accordingly, Ahmadi's claims that his lawyer was ineffective regarding Pham's criminal record; the allegedly inconsistent statements made by Pham, Garza and Meyer; the improper phrasing that led to incorrect inferences; the terms of the HP contract; and the sufficiency of the evidence are procedurally defaulted and should not be considered by the Court.[6]

---

[5] Ahmadi has made no claim of actual innocence and none is apparent from the record. Thus, any saving provided by that theory is inapplicable under the facts presented here.

[6] Even if the Court addressed the merits of these defaulted claims, they are substantively meritless. Ahmadi has not shown that Pham's alleged criminal record was admissible or how it would have discounted Pham's testimony. Ahmadi's claims regarding the inconsistent statements and improper phrasing are conclusory. The introduction of the HP contract into evidence would not have altered the case; Garza and Ahmadi's actions violated the contract when they were reimbursed for unnecessary or unperformed work. In fact, the contract was entered into evidence for the jury's review and the result speaks for itself. Dkt. Nos. 17-11, p. 3737 to Dkt. No. 17-12, p. 3806. Lastly, the Court of Criminal Appeals was not unreasonable in its determination that there was sufficient circumstantial evidence to convict Ahmadi. The standard for this Court to apply is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,

**B. Voir Dire Instructions**

Ahmadi asserts that his lawyer was ineffective for failing to object to the judge's instructions regarding reasonable doubt. While properly before the Court, this claim also is meritless.

As previously noted, the judge instructed the jury that each juror had to determine what constituted proof beyond a reasonable doubt and that there would be no external indicators ("There's not going to be a light, no buzzer, no whistle . . .") to indicate when the State had met its burden. The judge's instructions accurately informed the jurors of the law in Texas. "It is plain that prospective jurors may form their own definitions of proof beyond a reasonable doubt." Murphy v. State, 112 S.W.3d 592, 598 (Tex. Crim. App. 2003). The judge also accurately informed the jury that the State had the burden of proof. Given that the judge correctly instructed the jurors regarding reasonable doubt, any objection to these instructions would have been meritless. Counsel is not deficient for failing to raise frivolous objections. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.") (internal quotations omitted).

Accordingly, there is clearly a reasonable argument that counsel satisfied Strickland; as such the Texas court was not unreasonable in rejecting Ahmadi's assertion and this claim should be dismissed.

**IV. Recommendation**

WHEREFORE it is **RECOMMENDED** that Thaler's Motion for Summary Judgment, Dkt. No. 13, be **granted** and Ahmadi's petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. § 2254 be **denied**.

---

319 (1979) (emphasis original). As identified by the state courts, there was clear circumstantial evidence of Ahmadi's guilt (the payments to Garza, the knowledge of the ordering system, Cardenas inventing reasons why parts were defective). Given this determination, it cannot be said that Ahmadi's lawyer was ineffective for failing to raise this issue.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2254 motion to the Court of Appeals. 28 U.S.C. § 2253(c)(1)(A). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). "Importantly, in determining this issue, we view the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Druery v. Thaler, 647 F.3d 535, 538 (5th Cir. 2011) (internal quotations omitted) (citing Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir.2000)). The district court must rule upon a certificate of appealability when it "enters a final order adverse to the applicant." Rule 11, Rules Governing § 2254 Petitions.

After reviewing Ahmadi's § 2254 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Ahmadi's § 2254 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is **RECOMMENDED** that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985);

Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

DONE at Brownsville, Texas, on January 24, 2013.

_____
Ronald G. Morgan
United States Magistrate Judge